THE UNION SAVINGS BUILDING & LOAN CO., APPELLANT, *v.*
AMBURGY ET AL., APPELLEES. (Four cases)

(Nos. 247A, 247B, 247C and 247D—Decided May 12, 1958.)

*Mr. David H. Stevenson* and *Mr. Ralph E. Gentry,* for appellant.

*Mr. Hugh K. Martin,* United States District Attorney, and *Mr. Richard H. Pennington,* for appellee United States of America.

*Mr. Albert L. Herrick,* for appellee Brock H. Herald.

*Messrs. Young & Jones,* for appellee C. A. Newton.

*Messrs. Maple & Maple,* for appellee J. Raymond Hoy.

LONG, J. These four cases were tried together in the Common Pleas Court of Warren County by agreement of counsel and are in this court on appeal on questions of law. The questions for decision in this court are (1) whether there exist good, valid mechanic's liens against the four pieces of real estate; and (2), if the liens are valid, do they take precedence by way of priority over the mortgages of the plaintiff-appellant.

It appears from the evidence that each of the four parcels of real estate has been sold and the proceeds are insufficient to pay both the mortgages and the mechanic's liens. The evidence discloses that Wayne S. Amburgy and his wife, Gertrude, defendants, two of the appellees herein, were engaged in the

building business, and as funds were needed to complete the construction of the buildings on the four lots, they made the usual application for construction loans, and executed mortgages were duly recorded. C. A. Newton, one of the other appellees, was the contracting plumber on all four jobs; and when Amburgy was given his construction loan by appellant, The Union Savings Building & Loan Company, he presented to it preliminary affidavits, purporting to be signed by Newton to the effect that Newton had been paid; these affidavits were forged and there is no dispute that Newton had not been paid. The evidence indicates that Amburgy appeared at Newton's home for the purpose of having Newton sign certain affidavits, made out in long hand, ostensibly for the purpose of getting the money from the appellant, The Union Savings Building & Loan Company; although no money was due, at the time, from Amburgy to Newton under their contract, Amburgy did promise Newton some $425, if he, Newton, would sign the affidavits, which he did. Newton subsequently filed mechanic's liens against the four parcels of land in question and after that assigned his claims against the Amburgys, together with the mechanic's liens, to the appellant, The Mutual Manufacturing & Supply Company. In other words, the latter company as assignee stands in the shoes of Newton, and if Newton's mechanic's liens are good against the property, then the claims of the Mutual Manufacturing & Supply Company take precedence over the mortgage of the appellant, The Union Savings Building & Loan Company.

This court has had a great deal of difficulty in determining whether the so-called affidavits or preliminary signed statements of Newton, supposedly under oath, constituted a compliance with the statute. Section 1311.04 of the Revised Code provides as follows:

"Whenever any payment of money becomes due from the owner * * * or whenever the original contractor desires to draw any money from the owner * * * such contractor shall make out and give to the owner * * * *a statement under oath,* showing the name of every laborer * * * subcontractor," etc. (Emphasis ours.)

Let us look at the record to determine whether there was

compliance with the statute. In the examination of Newton by Mr. Stevenson, we find the following:

"Q. Prior to filing this affidavit—mechanic's liens and having it duly recorded, did you submit any preliminary affidavits to the defendant, Wayne Amburgy? A. Yes, I did.

"* * *

"A. He wanted them to show my material had been paid and my labor had been paid so that he could draw on a construction loan. I was to have $425 as stated on the affidavit which was due me, but all labor and material had been paid for."

Then follows the testimony that Amburgy prepared the affidavits and that they were signed in Newton's home.

Again, Mr. Stevenson cross-examined Newton further:

"Q. Mr. Newton, these affidavits that you testified that you signed for Wayne who came to your home, who was the notary public? A. There was no notary public.

"Q. In other words, you signed them and Wayne took them away and they were not signed in the presence of a notary public? A. That's right.

"Q. And you swore to them? A. No, I did not swear to them."

The record further indicates that Newton was not to be paid until his work was done; he still had the work following the "roughing-in" of the plumbing to do. And yet he was representing that there was due him from the owner the sum of $425. Not only was he to get money from the owner, but he knew the purpose of the preliminary statements was to assist Amburgy to consummate his construction loan. Now the question arises: "Did Newton give Amburgy, the owner, *a statement under oath*?" We think not. He didn't "appear before a notary." He did not "swear" to his statements.

Section 1311.04 of the Revised Code further provides as follows:

"Until the statements are made and furnished in the manner and form provided for in this section, the contractor [Newton] has no right of action *or lien against the owner*." (Emphasis ours.)

Newton was a contracting plumber; he had experience in matters of this kind; he knew Amburgy's purpose in requesting

preliminary statements; he knew that Amburgy wanted money from the Building & Loan Company; he knew, or should have known, that these statements were required to be *"under oath."* They were not given with the solemnity required by the statute.

The courts of this state have repeatedly held that in order to obtain a lien of this kind, the lienor must follow the statutes to the letter. In *Mahoning Park Co.* v. *Warren Home Development Co.,* 109 Ohio St., 358, 142 N. E., 883, the Supreme Court held in the fourth paragraph of the syllabus:

"The provisions of Section 8312, General Code [now Section 1311.04, Revised Code], wherein certain statements are required to be furnished by an original contractor to an owner, part owner, or lessee, are mandatory; compliance therewith is a condition precedent to the perfection of the lien, and unless complied with the contractor has no right of action or lien against the owner, part owner, or lessee."

This court, in *Frisch* v. *Ammon,* 34 Ohio App., 447, 171 N. E., 247, made a similar decision. Judge Ross, in a well-written opinion, had this to say:

"Under these facts the provisions of Section 8312 [now Section 1311.04, Revised Code] were not followed, and the lien, under the provisions of that section, providing that no right of action or lien against the owner shall be maintained until the statements were filed as required, was void against the mortgage."

On March 4, 1957, in the case of *F. W. Winstel Co.* v. *Johnston,* 103 Ohio App., 525, 143 N. E. (2d), 730, this court had occasion to consider the same principle involved in the case at bar; in that case the plaintiff did not file the necessary copy of the affidavit with the owners of the premises within the time required by the code, and we held that such failure was fatal to the validity of his lien.

Before deciding as to whether the liens in question were valid, the court was considering the applicability of Section 1311.14 of the Revised Code, in the event we found that the liens were valid. This latter section of the Code has to do with the determination of the priority of mortgages over liens of the kind in question, and sets out the circumstances under which

priority exists. Having determined that the mechanic's liens in question are invalid, it is unnecessary to consider Section 1311.14, Revised Code. For the reasons set forth, the judgment of the Court of Common Pleas is reversed; final judgment is rendered in this court in favor of the appellant, in accordance with these findings.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.